## THE WANDERER.[1]

### SMITH, Owner of Norwegian Bark Wanderer, v. ASHLEY PHOSPHATE CO.

*(District Court, E. D. South Carolina.  December 10, 1886.)*

DEMURRAGE—BILL OF LADING—EVIDENCE—AMBIGUOUS WORDS—ADMISSION OF PRIOR CONVERSATIONS TO EXPLAIN.

Libelant's vessel was, while at sea, let by charter-party.  By its terms, the vessel, after discharging at A. the cargo then laden. was to proceed to B., there obtain a new cargo, and carry the same to C.  The vessel was to pay the cost of discharging cargo, and 15 lay days were stipulated for in which to load and discharge.  In unloading at A., and in loading at B., 13 of these 15 days were consumed.  Under these circumstances, it was proposed by the shippers of the new cargo, who were the same firm as the original charterers, that three instead of two working days should be allowed for discharging, and that in consideration thereof the ship should be relieved from its obligation to discharge cargo at its own cost, and that the burden should be assumed by the merchant; the vessel's crew, however, assisting therewith.  This modification of the contract was in parol.  Bills of lading were subsequently made out and signed.  The body of the bills of lading contains the words: "All other conditions as per charter-party of August 1, 1886."  Upon the margin of the bill there was contained the following clause: "Three working days are left for discharging."  At the bottom of the bill there was written these words: "The cargo to be discharged for account of the merchant within three working days, crew to assist, if more time used, demurrage to be paid as per charter-party."  *Held*, that the written words upon a printed document give rise to an ambiguity which authorizes the admission of the parol agreement, and that, in the light of this testimony, the meaning and use of the words are explained, and that the consignee. to whose order the bills of lading had been assigned, must pay the cost of discharging the cargo.

In Admiralty.   Libel *in personam* for freight.

*A. G. Magrath,* for libelant.

*J. N. Nathans,* for respondent.

SIMONTON, J.   The libelant claims $246.56 freight of a cargo of kainit delivered to respondents, holders of a bill of lading therefor. Respondents admit the amount of freight earned, but claim to have paid the sum of $129.25 for discharging the cargo, which sum they allege should have been paid by the ship, and therefore must be deducted from the freight.   They pay into court $117.31, the difference between $246.56 and $129.25.   The question made is, by whom must the cost of discharging cargo be paid, the ship or the merchant?   No question is made as to the reasonableness of the amount charged for discharging cargo.

#### FINDING OF FACT.

On August 1, 1885, a charter-party was made between the agent of the Wanderer and the firm of Hermann & Theilnehmer, of Stettin, whereby it was agreed that the Wanderer, then on her passage to Stralsund, should, after discharging cargo at Stralsund, load at

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

Stettin a cargo of manure salt, (kainit,) therewith to proceed to Charleston, South Carolina; freight, eight shillings sterling for every ton of 20 hundred-weight, English, taken on board; the freighter to pay all dues and duties on cargo, and the ship all other charges; the cargo to be brought to and taken from along-side at merchant's risk and expense; 15 working days altogether to be allowed the merchant for loading the cargo and discharging the same.

Under this charter-party, the Wanderer, having arrived at Stralsund, and having discharged cargo, proceeded to Stettin, and was ready to receive cargo as in charter-party. When this was completed, it was found that 13 of the 15 days which were allowed for loading and discharging cargo had been consumed. Some parley took place between the parties, which will be alluded to hereafter, and bills of lading were signed by the captain in the office of the charterers. These bills of lading were filled out by some one, presumably a clerk in their office; but it does not appear whether either of the members of the firm, the charterers, was present at the time.

The bills of lading are partly printed and partly in writing. They follow the terms of the charter-party in all but two respects. They refer to the charter-party, and confirm it. They are between Hermann & Theilnehmer, the charterers, and the captain of the Wanderer, and they are to order. They vary from the charter-party in these particulars: Upon them, in writing, is inserted the provision for freight as is stated in the charter-party, eight shillings for every in-taken ton, omitting the provision that the ton should be 20 hundred-weight, English, and closing with these words: "All other conditions as per charter-party of first August, 1885." On the margin are written these words and figure, "(3) three working days are left for discharging;" and at the bottom of the bills, above the signature of master, are these words: "The cargo to be discharged for account of the merchant within three working days, crew· to assist, if more time used, demurrage to be paid as per charter-party." The punctuation is as in bills. The bill of lading held and produced by respondent is indorsed in blank by Hermann & Theilnehmer.

The Wanderer arrived at Charleston. The respondents claimed the cargo. The question was at once made at whose expense the cargo should be discharged. The master of the Wanderer refused to bear the expense. The respondents, protesting that he should do so, and waiving no right, employed a stevedore, had the cargo discharged, and paid the bill, $129.25.

### CONCLUSION OF LAW.

The contract under which this cargo was carried is to be found in the charter-party and in the bill of lading. Whatever verbal agreement or understanding preceded each of these written instruments, when they were reduced to writing they expressed the contract, and to them we must look for it.

The charter-party and the bill of lading are between the same parties. The bill of lading, signed by the master of the Wanderer, is to the order of the same firm who are the charterers. Whatever doubt there may be in the testimony whether Hermann & Theilnehmer, or either of them, were present when the bills of lading were made out and signed, or whether the clerk who filled them out acted as the agent of that firm or of the master, the firm accepted the bills of lading; acted on them; by their indorsement, when deliverable to order, adopted and confirmed them. The respondents hold title, under this indorsement, of an unnegotiable instrument, and hold as that firm held. The charter-party by its terms provided that the cargo was to be discharged at the cost of and by the ship; "the freighter to pay all dues and duties on cargo, and the ship all other expenses;" "the cargo to be brought to and taken from along-side at merchant's risk and expense."

Was this contract changed in any of its terms afterwards? There can be no doubt that parties to a written instrument,—a contract,—complete in all its parts, may afterwards, on sufficient consideration, vary its terms even by parol; that such parol contract can be set up, and proved; that, unless it come in conflict with the statute of frauds, it would be enforced. An effort in this case has been made to prove a parol contract varying this written contract; but, as the bill of lading was prepared after the *colloquium* offered in evidence, and then the will of the parties was reduced to writing, we cannot look beyond the bill.

Did the bill of lading change the contract of the charter-party? The first change, omitting the "twenty cwt. English," is unimportant. What of the other words, "the cargo to be discharged for account of the merchant within three working days, crew to assist, if more time used, demurrage to be paid as per charter-party?" If these words made a change in the charter-party, they would not be affected by the preceding words in the first alteration, "all other conditions as per charter-party of first August, 1885." The words we are now considering occur in the same instrument, are in writing and not print. They occur in the latter part of the instrument. It would seem that the parties to this bill of lading realized that some change may have been made by it in the terms of the charter-party, for they expressly exclude the idea that the demurrage provided in the charter-party was changed: "If more time be used, demurrage to be paid as per charter-party."

Now, what change was made? As we have seen, the charter-party provided that the cargo should be taken in and be discharged in 15 working days, and also that the expense of discharging should be borne by the ship; the cargo "to be taken from along-side at expense and risk of the merchant." The bill of lading says: "The cargo to be discharged for account of the merchant within three working days, crew to assist." Whom? The ship? Is this not within the scope

of their employment? Then why insert it? And what place has it in a contract with a third party? The words themselves have a clear, definite meaning. They raise a question only because of the circumstances around them, the other words connected with them, their place in the bill of lading, that they are in the bill of lading, that they are written upon a printed document. Thus an ambiguity exists which calls for explanation.

Mr. Greenleaf, discussing the rule as to the admissibility of parol evidence upon the subject-matter of written instruments, says: "Where the agreement in writing is expressed in short and incomplete terms, parol evidence is admissible to explain what is *per se* unintelligible, such explanation not being inconsistent with the written terms." Section 282. So, again, section 288*a*: "Previous conversations between the parties may be shown, when that becomes important, to show in what sense subsequent writings passing between them were understood." (Redfield's Ed.)

Applying this rule, and admitting this testimony, it appears that, while the ship was at Stettin, the 15 days allowed in the charter-party for loading and discharging cargo had almost expired; that in fact but two days remained. This exposed the charterer to demurrage at a rate of about eight pounds per day. In this condition of things it was proposed that three working days should at all events be allowed for discharging cargo; that, in consideration of this indulgence, the ship should be relieved from its obligation to deliver cargo entirely at its own cost, but that the crew should assist in this discharge,—the burden, however, being assumed by the merchant. In order to carry out this, these words were added to the bill of lading, —words inconsistent with the charter-party, and calling for explanation. In the light of this testimony, the meaning and use of the words are explained.

It is ordered and decreed that the respondent pay to the libelant the sum of $246.56, and costs of this suit, and that the amount paid by them into court be credited on this sum.