HENRY W. PEABODY ET AL. v. ARTHUR O. BEMENT ET AL.

*Contract—Construction—Evidence—Reasonable time.*

1. Proof of so much of the surrounding circumstances under which a written contract was made as is necessary to enable the court to properly construe it is always admissible.

2. In this case the plaintiffs contracted in writing with defendants to insert four pages of illustrations and prices of defendants' goods in an edition of plaintiffs' catalogue of American manufactured goods, to be circulated by plaintiffs' correspondents in foreign countries. Defendants agreed to furnish electrotypes and copy for the four pages, but no time was fixed within

which this was to be done. The contract was made January 28, 1886, and the catalogue was published January 1, 1887, without defendants' advertisements, which they had been notified must be furnished by November 1, 1886, or the catalogue would be published without them. The trial judge found from the evidence that this was not a reasonable time under the circumstances of the case, and that the publication was premature, and that plaintiffs must be regarded as having abandoned their claim under the contract; which findings are held to have been fully justified.

Error to Ingham. (Peck, J.) Submitted on briefs November 8, 1889. Decided December 28, 1889.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Frank E. Robson,* for appellants. Brief is confined to a discussion of the evidence.

*Cahill & Ostrander,* for defendants, contended:

1. The facts found by the trial judge are conclusive if there is any evidence to support them; citing *Johnson v. Crispell,* 43 Mich. 261; *Farrington v. Sexton,* Id. 454; *Green v. Gill,* 47 Id. 86; *Kane v. Stowe,* 50 Id. 317; *Kundinger v. Railway Co.,* 51 Id. 185; and if such facts support the conclusions of law they will stand.

2. If the facts found support the judgment, it will stand, regardless of specific legal conclusions; citing *Gillman v. Boynton,* 36 Mich. 236; *Seeley v. Albrecht,* 41 Id. 525.

3. The rulings upon separate questions of law will not damnify a party if the findings of fact do not entitle him to relief; citing *Kane v. Stowe,* 50 Mich. 317.

4. The judgment will not be reversed for the admission of improper evidence, unless it is clear that it affected the judge's conclusions; citing *Mower's Appeal,* 48 Mich. 441.

5. Unless the facts found are sufficient to warrant a judgment for plaintiffs, it is a necessary conclusion that the judgment for defendants cannot be disturbed; citing *Johnson v. Crispell,* 43 Mich. 261; *Seeley v. Albrecht,* 41 Id. 525.

SHERWOOD, C. J. This action is for damages against the defendants by reason of their alleged failure to per-

form their part of a contract with the plaintiffs, of which the following is a copy:

"Messrs. Henry W. Peabody & Co., Boston, Massachusetts, are hereby authorized to insert our four pages of illustrations and prices of our goods in an edition of 800 copies of their catalogue of American manufactured goods, upon the following terms:

"1. The said 800 copies are to be delivered to their correspondents and other leading importers of Australia, New Zealand, South Africa, England, and the continent of Europe.

"2. We agree to furnish electrotypes and copy for our said four pages, and our discounts for the discount sheet, which is to be printed separately, and to accompany said catalogues.

"3. We are to pay the sum of eight hundred dollars for said insertion, when proof of our said four pages shall have been forwarded to us and approved. Above amount to be payable in such goods of our manufacture as Henry W. Peabody may order from us. Goods so taken in payment to be invoiced at our bottom cash prices.

"4. Henry W. Peabody & Co.'s liability under this contract shall not exceed the amount paid by us as aforesaid, in case of non-publication of catalogue.

"*Dated Boston, January 28, 1886.*

"E. BEMENT & SONS.

"We accept the above authorization, and promise to fulfill the terms thereof.

"HENRY W. PEABODY & Co.

"*Dated Boston, January 28, 1886.*"

Besides the count upon this contract, the declaration contained the common counts. Defendants pleaded the general issue, and gave notice that they would show, on the trial,—

"That no time was agreed upon within which the defendants were to furnish the plaintiffs electrotypes and copy for said four pages of advertisements, and discounts for the discount sheet, in the plaintiffs' declaration mentioned, but said electrotypes and illustrations were to be made upon information, and from samples of goods, which

79 MICH—4.

the plaintiffs then and there agreed to furnish to the defendants, showing the kind of goods required in the various foreign markets in which the plaintiffs' proposed catalogue was to be circulated; that said defendants were wholly ignorant of the kind of goods required in such markets, and so informed the plaintiffs, and that said plaintiffs thereupon undertook and promised to furnish the defendants with information, and with samples of tools, which would enable defendants to make patterns, cuts, electrotypes, and illustrations for insertion in plaintiffs' said catalogue, and also to enable the defendants to manufacture and furnish to the trade such goods as should be ordered through the circulation of said catalogue or otherwise; that the plaintiffs wholly neglected to furnish the defendants with the information and samples of goods necessary to enable the defendants to make and furnish the said electrotypes and copy in the plaintiffs' declaration mentioned, and the defendants were unable to procure the same elsewhere in time to furnish such copy and electrotypes when required by the plaintiffs."

To this notice was added a claim under all the common counts as set-off.

The cause was tried in the Ingham circuit before Judge Peck, without a jury, who made special findings both upon the facts and law, and thereupon rendered judgment for the defendants.

The following is the substance of the findings of fact:

1. That the plaintiffs were a firm residing in Boston, and the defendants a manufacturing firm doing business in Lansing

2. That the two firms entered into the written contract above set forth on January 28, 1886.

3. That there was some talk, before signing the contract, that the catalogue would be published late in the summer or early in the fall of 1886, but no agreement was made, orally or in writing, as to the time of publication.

4. That before the contract was made defendants had never sent any of their goods to Africa or Australia, or to any of the places where the proposed catalogue was intended to go; that the object of defendants in making

the contract was to extend their trade to territory which the proposed catalogue was designed to reach, and that this was understood by plaintiffs when the contract was made; that, before the defendants could furnish the electrotypes and copy for the four pages of illustrations mentioned in clause 2 of said contract, it was necessary to learn what styles were needed in those markets, and make and photograph them, and make electrotypes and cuts for that purpose, and make such changes as were necessary to adapt them to the new market where they were to go.

5. Soon after the contract was made the plaintiffs began to hurry up the defendants in furnishing the electrotypes and other material for the four pages or illustrations in the catalogue. Their first letter on the subject was written February 24, 1886. Other letters were written by them, urging the defendants to furnish the necessary material for four pages, on March 30, April 27, May 22, and June 4. On August 21 they wrote defendants that they would go to press next week, and the delay was becoming very serious to them. On September 14 they wrote defendants that the book was in the hands of the printer, and that if the material was not sent the pages contracted for would go out in blank. On September 23 defendants replied that they would not be ready for at least two months with the cuts, as they were making new patterns and styles, in order to hit the trade the circular would reach. On September 28 plaintiffs replied, asking the defendants to furnish cuts and particulars of such machines as they had; mentioning some particular ones. On October 5 defendants answered that they were changing patterns all through, as they thought it best before making new cuts and advertising. October 18 plaintiffs wrote defendants that it would be necessary to furnish the cuts and advertisements by November 1, or they would be held liable for the space contracted for. To this defendants made no reply. The book was published January 1, 1887, before defendants had completed the cuts and advertising matter, and without containing any illustrations or advertisements for them.

6. After the contract was signed, Mr. Arthur O. Bement returned home from Boston to Lansing, and further investigated the trade which he expected the catalogue to reach. Confirmed the opinion previously entertained that a considerable portion of the goods which his firm

were manufacturing, and expected to advertise in the proposed catalogue, were not such as would meet the trade. This was particularly true as to plows. The defendants went to work without delay, preparing for the cuts and advertising matter, and kept at the work diligently until it was completed. They first had to procure samples of the plows desired, which they did after considerable difficulty and delay. The trade they desired to reach required that patterns for a line of twenty sizes of plows alone should be finished, electrotyped, and photographed. The plows for samples could not be purchased by the defendants of the manufacturers in one bill, as defendants were business rivals of such manufacturers. They had to be procured in an indirect manner, and separately, from other dealers. The labor and time necessary to finish and furnish the cuts and advertising matter contemplated in the contract, under the circumstances, required a longer period than until November 1, 1886, and defendants did not actually complete it until the middle of 1887, after the catalogue had been published. No electrotypes or other advertising matter required by the contract were furnished by defendants at all, and plaintiffs published the catalogue on January 1, 1887, without them. The catalogue was circulated as required by the contract.

7. After the catalogue was published, and on January 6, 1887, plaintiffs demanded by mail the goods of defendants which were to be taken in payment for the publishing done by plaintiffs under the contract, which demand was received by defendants, but no attention was given to it by them.

From the foregoing facts the court found, as his conclusion of law, the following:

"1. As the written contract contains no provision as to the time within which the 'electrotypes and copy' were to be furnished by the defendants, they must have been furnished within a reasonable time, in view of the purpose and substance of the contract, and the circumstances surrounding the parties at the time. There was not sufficient time for this to be done, reasonably, between the making of the contract and the 1st day of November, 1886, when the catalogue was published. The publication of the catalogue must therefore be regarded as

premature. Defendants were not in legal default in not furnishing the 'electrotypes and copy' before the publication, and plaintiffs' publication of the catalogue without defendants' four pages of advertisements must be regarded as an abandonment of claim against defendants under the contract.

"2. Judgment will therefore be entered for the defendants, with costs."

The circuit judge allowed the defendants to show that the instrument declared upon did not show all the contract relations between the parties in regard to the business treated of; that the defendants had an understanding with the plaintiffs which induced defendants to enter into the contract, and which is not set out therein, and defendants were allowed to show what it was; that plaintiffs were to furnish defendants information, after the contract was made, as to the goods or sample plows to be placed in the catalogue to go abroad; that defendants would not, under any circumstances, have agreed to advertise in the proposed . catalogue, except that their advertisement of their kind of goods was to be exclusive, and the catalogue was to represent no one else in the defendants' line of goods. The testimony under the last four paragraphs was objected to by plaintiffs' counsel upon the ground that the defendants were concluded from making the proofs by the written contract. We are not able to agree with counsel for the objection. The questions only call for so much of the surrounding circumstances under which the contract was made as was necessary to enable the circuit judge to properly construe it, and this much is always permissible, and no error was committed by the court in so holding.

It is also urged that the findings of fact do not support the conclusions reached by the circuit judge. A review of the testimony, however, has failed to convince us of any merit in this objection.

It is further insisted that the court erred in holding that from the date of the contract until November 1, 1886, was not a reasonable time within which the defendants should have furnished the electrotypes and copy mentioned in the contract. This, however, is but little more than an amplification of the last finding. The views of the court are entirely justified by the evidence in the case, that the publication of the catalogue was premature, and with such knowledge as the plaintiffs had of the facts, and the situation of the defendants, and their ability and facilities for furnishing the electrotypes and copy, in the course plaintiffs pursued in the matter, they might well be regarded as abandoning the work which would entitle them to the claim they now make against the defendants.

The judgment rendered by the circuit judge must be affirmed.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred with SHERWOOD, C. J.

MORSE, J. I do not think some of the oral testimony was admissible, but I concur in the affirmance on the ground stated by the circuit judge.