BARCUS et al. v. GATES et al.

(Circuit Court, E. D. Virginia. March 11, 1904.)

No. 500.

1. ATTORNEY AND CLIENT—CONTRACT FOR SERVICES—CONSTRUCTION.

Where a written contract for the employment of an attorney, to be paid a contingent fee, is uncertain as to the services to be rendered or the manner of payment, parol evidence is admissible to show the surrounding circumstances and situation of the parties, and the nature of the litigation contemplated, as appears from the statements, acts, and conduct of the parties at the time and thereafter.

2. SAME—EXTRA SERVICES.

Petitioner, who was an attorney at law, was employed by defendants, by a written contract, to recover as much as possible for them on account of sums of which they claimed to have been defrauded, for which he was to receive a sum equal to a percentage of what should be recovered by suit or otherwise, either in money or property. It appeared from extrinsic evidence that it was then expected that a settlement would be made and certain property recovered, but a settlement was not effected, and petitioner instituted a suit, which was contested for a number of years, and resulted in the recovery of a money decree. During its pendency, petitioner was compelled to devote a considerable time to looking up evidence which defendants had not supplied, and after the decree to look after its collection, in some cases taking property from the defendants therein. Held, that such services were not contemplated by the written contract, and petitioner was entitled to be compensated therefor in addition to the fees therein provided for.

3. SAME—CONTINGENT FEE—MEASURE OF RECOVERY.

Under a contract for legal services to be rendered for a contingent fee equal to a percentage of the recovery, where property was taken in part satisfaction of the judgment obtained, the attorney is entitled to such percentage computed on the fair value of the property, without regard to the price at which it was taken.

In Equity. On petition of John B. Sherwood for allowance of attorney's fees.

This case is now before the court upon the petition filed herein on the 19th day of November, 1901, by John B. Sherwood, one of the counsel for the complainants in the original cause, asking the court to settle the amount of his compensation for professional services rendered in the cause. Subsequently to the filing of this petition, the defendants filed their demurrer thereto, which was overruled, and later, on March 24, 1902, their joint answer thereto; and, upon the issues thus joined, evidence was taken by the petitioner and the defendants in support of their respective claims, and the cause submitted to this court for determination after full argument by counsel for the parties, respectively.

The petitioner bases his claim to a fee, in part, upon a certain agreement for a contingent fee entered into between himself and the defendants in the petition on the 12th of December, 1896, and, in addition, claims that he rendered sundry services not covered by the said contract, for which he should be paid, whereas the defendants insist that the plaintiff's entire service was rendered under said contract, and he is entitled to no compensation other than the 10 per cent. therein referred to. The contract in controversy is as follows:

"Agreement, made this 12th day of December, 1896, by and between James Q. Barcus, John M. Thompson, R. A. Edwards, and H. A. Huston (said Edwards and Huston represented herein by said Barcus and Thompson) of the first part, and John B. Sherwood, attorney at law, of the second part, witnesseth: That said parties of the first part hereby employ said second party to collect of and from the persons residing in the State of Virginia all that is possible to collect, either by suit or other lawful means, that said persons have defrauded said parties of the first part by means of representations, personal or by agent, as to the existence of certain beds of phosphate, that amount being in the sum of about twenty thousand to twenty-five thousand dollars; and in consideration of such services, they agree to pay him a sum equal to ten per cent. of all he shall collect, either in money, land, or any other thing of value that may be accepted by said parties in settlement, of which amount two hundred dollars in cash is paid down upon the signing of this instrument; also to pay all necessary expenses of said Sherwood upon proper vouchers being presented. And said second party hereby and herewith accepts said employment, upon said terms above set forth, and will give his earnest attention at once to the collection of said monies, with the least expense, time, and trouble to said first parties as possible.

"Witness our hands in duplicate the day and date first above written.

"John M. Thompson.
"James Q. Barcus.
"R. A. Edwards ⎫ by **J. Q. Barcus.**
"H. A. Huston ⎭
"John B. Sherwood."

The following is a brief summary of the services performed by the petitioner, as claimed by him to be under the contract, as shown in his petition:

"Your petitioner further shows to the court that he, after the execution of said contract, thereupon entered into a study of the facts and law of the case, and this included an examination of all the books of the American Plant Food Company, and of letters and telegrams leading up to the formation of said company, and a mass of correspondence, and he was busily employed therein from the date of said contract until about the 7th day of January, 1897, when he came to Richmond, and, after consultation with Hon. L. D. Yarrell, who had been employed prior thereto by complainants, filed on the 19th day of January, 1897, in the office of the clerk of this court, the printed bill of the complainants herein.

"Your petitioner further shows that after all the defendants had entered their appearance by counsel, and each had filed demurrers, settling up seventeen grounds of demurrer, and the same had been set down for argument on the 1st day of June, 1897, your petitioner came on to Richmond again, and orally argued said demurrers before Hon. Robert W. Hughes, then presiding as judge of this court, and that said judge, after taking said cause under advisement, in the spring of 1898 sustained said demurrers and dismissed complainants' bill; that thereupon your petitioner, after a consultation with the complainants, against their best judgment, as they all then stated, induced them to pray an appeal to the Circuit Court of Appeals for the Fourth District [89 Fed. 783], and to file a bond and pay the costs; and he thereupon filed the proper papers on appeal, and wrote the brief of the complainants, and also the reply brief of complainants in said cause, and such proceedings were had in said cause that in November, 1898, said Circuit Court of Appeals reversed the cause on all seventeen points of contention, and remanded the same to this court for a hearing on its merits.

"Your petitioner further shows that shortly prior to the 1st day of September, 1899, said complainants were not ready for trial, for lack of material evidence they had neglected to obtain, and thereupon on last said day he again came to Richmond, and, in company with his associate, Hon. L. D. Yarrell, spent between two and three weeks in traveling over the eastern part of Virginia, including Richmond, Tunstalls, Whitehouse, West Point, New Kent Courthouse, Norfolk, and Portsmouth, in obtaining evidence of the facts in the cause; and this petitioner also went alone to New York City and Cincinnati, Ohio, and spent some days in consulting with chemists there who had analyzed said lands and others adjacent thereto.

"Your petitioner further shows that said cause was set down for hearing in open court before Hon. Edmund Waddill, Jr., on the 11th day of December,

1899, and that at this time Hon. C. V. Meredith became associated with your petitioner and said Yarrell, as local counsel, for the purpose of the said hearing before the court; that the defendants were represented by eminent legal counsel of the highest professional standing, and the hearing of the said cause was commenced on the 11th day of December, 1899, and evidence was taken daily, with both day and night sessions, continually until the morning of the 23d day of December, 1899; that all through said trial his associate counsel and the complainants were dependent upon your petitioner for all knowledge of evidence and production of witnesses, owing to the close and intimate study the petitioner had made of said cause, and were also dependent upon said petitioner for authorities necessary for ready use on the trial of said cause; and he further states that on account of the stress of business in said court, and the Christmas holidays, the court continued the case for argument to the 28th day of February, 1900.

"Your petitioner further shows that he expended the month of February in studying one thousand pages of typewritten evidence and in preparing his argument thereon, and came on to Richmond a few days prior to the 28th day of February, 1900, and on that day entered with associate counsel into oral argument of the said cause, which was continued daily for one week, and thereupon each side was granted permission to present printed briefs on the points made in argument, and requested to exchange the same.

"Your petitioner further shows that at once he, with his associate counsel, prepared and filed a written brief, and that when the last of the defendants' briefs had been filed, during the first week in August, 1900, your petitioner prepared, at his home, in Indianapolis, Indiana, a reply brief, and caused it to be filed during the first week in September, 1900.

"Your petitioner further shows that the chief reliance of defendants' counsel in the trial and on the argument was on the subject of ratification by complainants—a subject which had not been suggested by the facts stated to your petitioner on and prior to said 12th day of December, 1896, and prior to your petitioner entering into the contract above set out—and therefore additional and unexpected labor was thrown on your petitioner and associate counsel.

"Your petitioner further shows that on the 6th day of July, 1901, the presiding judge rendered his opinion in said cause, and the settling of the decree in favor of the complainants was set down for argument on the 1st day of August, 1901; that your petitioner thereupon came to Richmond a few days before, and was engaged for three days with his associate counsel in argument upon the form and substance of the decree, and upon a petition filed for a rehearing of the cause, until the close of the 3d day of August, 1901, when the final decree was entered in this cause for about thirty thousand dollars, in the aggregate, of principal, interest, and costs, against each and all the defendants, except the Virginia Marl Phosphate Company, and specifically setting aside said $27,000 lien and the deed from last said company to the American Plant Food Company."

### Services Outside of the Contract.

The petitioner claims, in addition to the services under the contract, he performed great labor, neither covered nor contemplated by the contract, as is fully set forth in said petition, and which may be summarized as follows: First. Services rendered in securing evidence preparatory to the hearing of the cause upon its merits, in Virginia, in which some three weeks' time was taken out of his office.   Second. For time occupied in Virginia, after the rendition of the decree in favor of his clients, looking to the sequestration of the property and estate of the defendants, extending from the 19th of September, 1901, to the 21st of October, and from November 6 to November 12, 1901, exclusive of the time spent in going to and returning from Virginia on two trips. Third. In taking sundry trips from Indianapolis to Chicago, New York, Washington, Baltimore, and Cincinnati; the exact number of days employed in each being difficult of ascertainment from the record.

No question is made by the defendants as to the value of the services rendered by the petitioner, or as to the efficiency and promptness with which the same were performed; but their sole contention is that whatever was done was covered by the contract aforesaid, and for which only 10 per cent. should be allowed.

Henry R. & Jno. Garland Pollard and John B. Sherwood, for petitioner.

Meredith & Cocke, for defendants in petition.

WADDILL, District Judge (after stating the facts as above). From the above statement, there are presented for the consideration of the court the following questions: First. Whether the petitioner is limited in his recovery by the contract aforesaid. Second. What services were had in view by the contract of employment; what recovery was contemplated; what was meant by the reference in the contract to "about twenty or twenty-five thousand dollars"; and what is the effect of the use of the language in the contract, "They agree to pay him a sum equal to ten per cent. of all he shall collect, either in money, land, or any other thing of value, that may be accepted by said parties in settlement." Third. What method of valuation should be adopted, and what valuation be placed upon the recovery heretofore had. Fourth. What services were rendered, if any, not covered by the contract, and the value to be placed thereon.

1. That the petitioner would be precluded from a recovery under his contract if the same was complete, plain, and explicit, both as to the services to be rendered and the method of paying for the same, may be conceded, as to the services clearly covered by the contract; but as it is uncertain just what services were to be performed, or what recovery was contemplated, and precisely how payment therefor was to be made, parol evidence should be admitted to show precisely what the parties had in view by their undertaking; and, to this end, the contemporaneous statements, oral and in writing, of the parties, in reference thereto, may be considered. Maryland v. The Railroad, 22 Wall. 113, 22 L. Ed. 713; 8 Rose's Notes (U. S.) 503; 9 Rose's Notes (U. S.) 666, 952; Brick v. Brick, 98 U. S. 514, 516, 25 L. Ed. 256; West v. Smith, 101 U. S. 263, 271, 272, 25 L. Ed. 809; Walker v. Brown, 165 U. S. 654, 668, 17 Sup. Ct. 453, 41 L. Ed. 865; Michels v. Olmstead (C. C.) 14 Fed. 219; The Wanderer (D. C.) 29 Fed. 260; Bacon v. Poconoket, 70 Fed. 640, 17 C. C. A. 309; Harman v. Harman, 70 Fed. 894, 17 C. C. A. 479; Peabody v. Bement, 79 Mich. 47, 53, 44 N. W. 416; Basshor v. Forbes, 36 Md. 166; Greenleaf on Evidence (16th Ed.) § 284a, and authorities cited; Id. § 205 "b" and "f," note 1.

2. From the language of the contract, read in the light of the circumstances under which it was executed, as shown by statements, explanations, and the conduct of the parties thereto leading to the execution thereof, and what was done as a result of such contract, it is quite clear that the real recovery had in view, should litigation become necessary, was the farm Northberry, in New Kent county, Va., on account of which the entire engagements and undertakings sought to be annulled by the defendants in the petition were entered into. The facts are briefly as follows: One Henley, as the representative of a corporation known as the American Plant Food Company, claimed that said farm was immensely valuable, as having upon it certain beds of phosphate, which could be used with great profit in the manufacture of fertilizer, and that the said company had acquired the farm at $100,-000, and owed on account of the purchase money thereof $27,000; and he succeeded in inducing the defendants in the petition, residents

of the state of Indiana, to take stock in said company, and to become largely interested in the same, and on account of which they paid in cash some $20,640, and executed their notes for other considerable sums. In the future conduct of the affairs of the company, it shortly became apparent that the defendants in the petition had been defrauded, and that they alone had actually paid their money into the company, and that the other incorporators had used bogus checks in making their supposed payments into the company, which were never used, but, on the contrary, were returned to the makers, and that while the farm was a fine one, having upon it valuable marl beds, the same could not be profitably used in making fertilizer, and that the high grade of analysis shown in the samples of the marl and so-called phosphate beds was the result of "salting" the samples. Upon the discovery of the true condition of affairs, the defendants in the petition entered into the contract aforesaid with the petitioner; their object and purpose at the time being to secure what they had paid, which they hoped they would be able to do without suit, by reason of the prominence of some of the parties to the transaction, and the still greater prominence of others who were supposed by them to be connected with it, and, upon failure to realize in this way, then at least to recover the farm aforesaid, which was believed to be worth not less than $25,000. The effort at settlement having finally failed, the original suit, in which the petition herein is filed, was instituted, from which it will appear that the primary purpose was to recover the farm, if settlement could not be had. A letter of one of the defendants in the petition, J. M. Thompson, written on the 28th of December, 1898, after the rendition of the decision of the Circuit Court of Appeals on the law of the case, to Judge Yarrell, and filed Exhibit "LDY. No. 4," with Yarrell's deposition, abundantly shows the manner in which the settlement was first hoped for, as it does, also, what the property was supposed to be worth. He says, on the question of values:

"I told Mr. Sherwood in Chicago last week, that we would be willing to accept the property in lieu of all claims against the Virginia parties; * * * and further, I think the property is worth $50,000.00, but under forced sale it might not bring that, but then we would be able to hold the Virginia parties for the balance of the money."

The result of the litigation was that the court decided that, on account of the fraudulent transactions as charged by the complainants, the entire dealings between the parties should be annulled and set aside, and the defendants in the petition should recover back the amounts paid by them, as far as possible, from the parties participating in the fraud, and that, so far as the farm was concerned, the vendors thereof having sold the same to the American Plant Food Company, and taken a lien thereon for the unpaid purchase money of $27,000, complainants could only recover, as against the said farm, the money which was paid thereon, out of the amounts paid by them into the company, to wit, the sum of $3,466.67, with interest from 6th February, 1895, and accordingly decreed that said last-named sum was a lien upon said farm, and that the farm should be sold in default of payment thereof, and a decree entered in favor of the defendants in the petition for the amounts paid by them against those participating in the fraud as aforesaid, with interest from times of payment. The meaning of the language "of

about twenty or twenty-five thousand dollars," in the contract named, was that said farm was believed to be worth that much, and that petitioner, Sherwood, might expect a recovery of property worth that much under his contract; and by the language, "they agreed to pay him a sum equal to ten per cent. on all he should collect, either in money, land, or any other thing of value, that might be accepted by said parties in settlement," that said Sherwood is entitled to an interest equivalent to 10 per cent., under his contract, of the value of whatever might be recovered, and to that extent he took a joint interest with the defendants in the petition in such recovery.

3. In ascertaining the value to the petitioner in the recoveries had, it is clear that, where property was taken in by his clients in order to effect a settlement with their debtors, he should receive a contingent fee on the fair valuation of the property, as distinguished from the price at which it was actually taken; and, so far as Northberry farm was concerned, since the farm was not actually recovered, but a lien secured thereon, and on account of which it was purchased, that the same rule should prevail. Adopting this method of settlement, the petitioner should not receive a contingent fee on the price at which Northberry was brought in by the defendants in the petition, under the lien, of some $5,200, but upon its real value, which the court ascertains to be at least $10,000. It is true that the evidence taken by the defendants in the petition fixes the values at from $8,000 to $10,000; but the court, in ascertaining this valuation, should not lose sight of the history of the farm, as shown by this previous litigation, and, indeed, of what it knows of its own knowledge, and certainly the figure named is the lowest that should be stated. Defendants in the petition received $4,000 in cash on account of their money decree, and $1,125 rents on account of Northberry farm, making $5,125 received in money, and sundry parcels of real estate from Lefew, one of the defendants in the first-named cause, the value of which is variously estimated at from $11,500 to $15,320. The conclusion reached by the court is that the fair valuation of this Lefew property is $13,314, and that that much could be realized on it at this time, as could $10,000 on the farm aforesaid. The Lefew property, which was recovered about two years ago, is admirably located, where property is enhancing in value as much or more than in any other point in the city of Richmond. It is all within two blocks of Lee Monument, in which section handsome residences are rapidly being erected. And the farm Northberry, though somewhat run down now, is especially easy of improvement, by reason of the green sand marl beds thereon, and is and has always been considered one of the fine farms of the state. Upon these figures, the petitioner, Sherwood, is entitled to and should receive by way of contingent fee, under his contract, 10 per cent. of the cash received and values aforesaid, amounting to $2,843.90.

4. That the services for which petitioner claims compensation, independent of or outside of the contract, are not such services as are embraced within the terms of the contract, upon any fair interpretation that can be made thereof, is too plain to admit of serious doubt or cavil. They consist, in effect, of two items—the first, of traveling over the country, spending as much as three weeks on one occasion in Virginia,

nearly 1,000 miles from his office, in search of evidence to be used upon the trial; and the other, of a month or more time spent after the final decree had been entered in the cause on its merits, with a view of ascertaining what, if anything, could be recovered from the different parties against whom the decree had been entered, and professional services in connection therewith. That this character of work and this service were not covered by the original contract would seem to be too plain to be controverted. Indeed, it is hardly among the probabilities that a contingent arrangement for 10 per cent. would have been entered into at all, had any such litigation been in view as this resulted in, if, indeed, employment could have been secured by contingent arrangement for such work at any figure; but to include such services as are now being considered under the 10 per cent. contract would not only be unreasonable, but to do what manifestly could never have been within the minds of the parties at the time, and is clearly neither within the letter nor spirit of the contract made by them. The letters written by James Q. Barcus, the most active of the complainants in the original suit in the prosecution of the case, as late as December 27, 1898, and April 8, 1899 (Exhibits LDY. Nos. 2 and 3 with Yarrell's deposition), long after the litigation had been inaugurated, and subsequent to the rendition of the decree favorable to the complainants in the Circuit Court of Appeals had been entered, shows that it was not the purpose of the parties to impose this sort of work on their counsel, as also that they were without evidence to sustain their case, but for this extra service of counsel.

The court concludes, upon the evidence in this case, taking into consideration the character of the case, and all the circumstances surrounding it, and the success attained, that the petitioner, Sherwood, should be allowed at least the sum of $2,000 for the work performed by him outside of the contract aforesaid, making a total allowance for professional services rendered of $4,843.90, from which should be deducted the payments and credits heretofore claimed by the defendants in the petition, amounting to $2,175.

In what has been said, no special reference has been made to the character of the litigation out of which the claim for fees on the part of the petitioner arose, or to the manner in which he performed his part of the undertaking. The suit was an exceedingly difficult one to maintain, and every question of law and fact arising in it was bitterly and vigorously contested from its institution to its close, many doubtful and difficult legal questions arising; and the best legal talent in the state—seven lawyers, as I now recall—were engaged on the part of the several defendants in the cause. The question of fraud being involved, and plainly charged against prominent and leading business men, who indignantly resented the accusation, the litigation was conducted with an earnestness and asperity that rarely occurs; and it required counsel of high order of talent to maintain the cause of the complainants. The work done in the cause was enormous. The trial alone, which was had before the court, under the equity rules so providing, took over two weeks; and the evidence, as taken by stenographers at the time, covered over 1,000 pages of typewritten matter. While the petitioner, Mr. Sherwood, was not the only counsel in the cause for the complainants—he having associated with him Judge L. D. Yarrell from the

commencement, and Mr. C. V. Meredith at the final hearing—it is doing no injustice to either of these gentlemen, who well and ably performed their duties, to say that the laboring oar in the litigation, from its inception, fell to Mr. Sherwood. He was the counsel near to the complainants, and upon whom they mainly relied. He did most of the work —indeed, his master mind directed and controlled it; and it is only just to him to say that he showed great skill as a lawyer in the performance of his duties, and spared no labor that would inure to the benefit of his clients.

The court is satisfied the fee herein allowed is as small compensation as was ever allowed an attorney for like services, and that the amount thus named, with what the defendants in the petition admit they have paid for counsel in the cause, is only what would have been a very small fee, upon a cash basis, for the work performed by the combined counsel, or if performed by one of them. In this case, if the court were called upon to allow compensation to counsel out of the recovery had, or of funds under its direction, uncontrolled by the terms of any contract between parties, it would not, in view of the doubtful and unpleasant character of the litigation, the onerous services performed, and the success attained, think of allowing less than 50 per cent. of the recovery had, or of the amount under its control. To do otherwise would be unjust and unfair to counsel.

A decree may be entered in favor of the petitioner, Sherwood, against the defendants in the petition, for the amount hereinbefore allowed, less the sum received by him as aforesaid.