SINGER, NIMICK & CO.

*v.*

HENRY T. STEELE.

*Filed at Ottawa June 16, 1888.*

1. CONTRACT—*with an attorney—right to employ an assistant at the expense of his client.* An attorney at law employed to collect a large demand, with the approval of his client compromised with the debtor, taking in payment some money, some lands, and about $7000 of notes of a third person, made payable to the attorney for convenience of collection, which notes fell due at stated periods. He was to receive $500 for making the compromise and for collecting these notes. The maker of the notes, before payment, becoming insolvent, assigned to the attorney various claims on his customers, who resided at a distance, and some in other States, as collateral security for the notes: *Held,* that the attorney might properly employ a competent person to collect the collaterals, and, in addition to his fee, retain a reasonable compensation to pay his assistant, as the collection of such collateral claims was not within his original contract.

2. MASTER'S REPORT—*exceptions thereto, whether necessary.* Where a party is dissatisfied with the finding of the master in chancery in stating an account, he should make distinct exceptions thereto, specifically pointing out any supposed error, so that the same can be readily determined by the court, and corrected. If he fails to file any exceptions, he will be understood as acquiescing in the conclusions and findings of the master.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. GARDNER, McFADON & GARDNER, for the appellants.

Mr. JOHN McGAFFEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This appeal is from a judgment of affirmance by the Appellate Court of the decree rendered by the trial court in the case of *Singer, Nimick & Co.* v. *Henry T. Steele*. The bill, as originally framed, prays for an account of all transactions of defendants in respect to the disposition made of certain notes taken from the Chicago Plow Manufacturing Company, in exchange, or as collateral thereto, for complainant's claim against one N. S. Bouton, and of "all collections thereof made by him, or which, without his defaults, might have been received." The bill was afterwards amended, by leave of the court, by inserting in the place of "or which, without his defaults," as follows: "or which, without his willful defaults or neglect."

It is seen, the evidence was quite sufficient to warrant the interlocutory decree that was rendered. It proceeded on well recognized equitable principles. The only questions that can arise as the case comes before this court, are: First, whether defendant could rightfully charge additional compensation, under the circumstances, for the services of the person he employed to assist him about the business of complainants; and second, whether any portion of complainants' claim was lost through the "willful default or neglect" of defendant.

It seems the relation of client and attorney existed between the parties to this litigation, and that while such relation existed, complainants placed in the hands of defendant, for collection, a claim of $15,720 against N. S. Bouton. That claim was compromised by defendant with the debtor by taking in the settlement, lands valued at about $7500, cash $1120, and notes of the Chicago Plow Manufacturing Company for $7200, which notes were made payable to the order of defendant, for the convenience of collection. These notes became

due and payable at stated periods. That settlement of the claim was fully approved by complainants, and no complaint is made on that ground. It was agreed defendant should receive $500 for his services in making that settlement, and for his further services in collecting the notes as they should fall due, and remitting the proceeds. That sum defendant retained out of funds in his hands, with the approval of complainants. At the time these notes were taken it was thought by all parties concerned the Chicago Plow Company was entirely solvent, but before all the notes were paid that company failed, and in order to secure the notes in question, the company assigned certain claims it had against its customers, to defendant and J. Blackburn Jones, as collateral security for its unpaid notes to defendant, for the benefit of complainants. It was for the services of Jones in trying to collect these collaterals that defendant charged additional compensation, and which was allowed to him by the decree of the court. In the decree, in this respect, it is not perceived there was any error. The $500 it was agreed should be paid to defendant was for his services in making settlement of complainants' claim against Bouton, and for collecting and remitting the notes of the plow company "as the paper falls due." As before remarked, it was then thought the plow company was solvent, and its notes in the hands of defendant would be paid in the manner agreed upon. It was not contemplated defendant would undertake the collection of collaterals assigned to him and his partner, Jones, without further compensation. That was not his contract. All he agreed to do in the future for the $500 paid him was to "collect and remit" the notes of the plow company as the same became due. So far as the notes were paid by the plow company in accordance with the agreement, defendant observed his contract in that respect. The collaterals assigned to defendant and his partner were upon persons residing in other States, and far distant from the residence of defendant, and

it would be an unreasonable construction of his contract that he should go to such distant points to make collections of collaterals not contemplated by his agreement. Nor was he bound to go in person. It was entirely proper that he should employ any competent person to make, or endeavor to make, collection on the collaterals.

As respects the second question, it is sufficient to say, it does not appear defendant failed to make collections, either on the notes taken from the plow company or on the collaterals assigned to him and his partner, by "his willful defaults or neglect," or otherwise. Reasonable diligence was shown in efforts to collect the collaterals placed in his hands, and that is all the law requires.

The cause was referred to the master in chancery to take an account in accordance with the directions given in the interlocutory decree. The master heard evidence and stated an account between the parties, and as no exceptions were taken to the report, the court decreed according to his findings, except as to the finding as to the allowance of extra compensation to defendant for legal services,—a part of the amount having been remitted by defendant. The practice is, where a party is dissatisfied with the finding of the master in chancery, he shall make distinct exceptions, so the court can readily understand what matters are at issue between the parties, otherwise it will be understood he acquiesces in the conclusions and findings of the master. According to the well settled practice, the court in this case first determined, by its interlocutory decree, the rights of the parties, and fixed the basis upon which the account should be taken, and then referred the cause to the master in chancery. On the coming in of his report, if either party was dissatisfied with its conclusions or findings, it was his privilege to file exceptions specifically pointing out any errors thought to have been made by the master, which could be readily determined by the court. That was not done

by complainants, and they will not now be heard to make objections to the master's report which they did not take and insist upon in the trial court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*