## Michael J. Cahill et al. v. Alice Wier Printy, Administratrix, et al.

### Gen. No. 13,624.

1. ABSTRACT—*when not in compliance with rule.* An abstract does not comply with the rules of court which merely mentions the fact that objections and exceptions were interposed to a master's report, but fails to set forth what such objections or exceptions were or what disposition was made thereof.

2. BOOK ACCOUNT—*when not competent.* Entries contained in a memorandum book are not competent where it does not appear that the book was kept or used in any regular course of business or that the entries were made in chronological order or that such entries were contemporaneous with the items entered.

Foreclosure. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at

the March term, 1907.   Affirmed.   Opinion filed February 13, 1908.

DICKINSON, MORRISON & ROST, for appellants.

CHARLES W. TAYLOR, A. S. ROBERTSON and PHILIP S. BROWN, for appellees.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a decree under a bill to foreclose a trust deed in the nature of a mortgage of certain real estate situate in the city of Chicago. The trust deed secured two notes of appellant, Michael J. Cahill, each payable to his own order and indorsed by him in blank, one for the sum of $2,387, delivered to and held by Mary McElroy at the time of her death, and the other for $75, delivered to and held by J. Frank Tyrrell at the time of his death. The holders of both notes died before the filing of the bill. The estate of J. Frank Tyrrell, through Catherine Burns, its administratrix, came into the cause by petition, asking permission of the court to participate in the proceeds of a sale of the mortgaged premises to the extent of the amount due upon the $75 note. Copeland and Ryan were made parties under an averment that they claimed some interest in the mortgaged premises accruing subsequent to the lien of the trust deed, and that such interest, if any, is held by them in subordination to the lien of the trust deed for the payment of the indebtedness evidenced by the two notes in the bill and trust deed described.

The answers of Cahill and Copeland admit the material averments of the bill, including the execution and delivery of the trust deed and the notes therein described, but Cahill sets up that Mrs. McElroy, at the time of her death, was indebted to him in a large sum of money for his personal service and attention to her and her business affairs and for disbursements made in her behalf, and seeks to offset such claims against the note for $2,387, forming an asset of her

estate. Cahill also filed a cross-bill, setting out the same matters contained in his answer. The cause was referred to a master in chancery, with directions to take the proofs and report his conclusions upon the facts and the law. The parties submitted their proofs before the master and he made in due time his report to the chancellor, after overruling objections thereto, and the court confirmed the master's report and entered a decree of foreclosure upon the original bill for the amount found due, with costs, and dismissed for want of equity Cahill's cross-bill. So far as we are able to gather from the abstract and briefs of appellants on file, the errors assigned and argued challenge the correctness of the decree in the following particulars: First, in not allowing the counter-claim of Cahill, and in excluding from the record the evidence thereof given before the master; and, second, that in the taxing of stenographers' fees as part of the costs, and also the statutory fee of the master for taking and transcribing the evidence, there is a double taxation of costs.

The following portion of the master's report appears in the abstract:

"I further find that all the evidence offered by said defendants, Michael J. Cahill and Earl Copeland, was incompetent, irrelevant and immaterial, because the demands of said defendant, Michael J. Cahill, against said complainant's intestate, Mary E. A. McElroy (if any such demands ever existed, and there is no competent evidence as to such demands), were wholly of an equitable nature, unconnected with the debt evidenced by said promissory note and trust deed (Complainant's Exhibits 1 and 2), and cannot be set off against said debt, and because all the evidence offered to support such demands is in the nature of hearsay evidence and is unworthy of belief.

"In regard to the alleged account between the defendant Michael J. Cahill and the said Mary E. A. McElroy, contained in the book marked Defendants'

Exhibit 1, of November 23, 1906, I find from an inspection of the same that it is entirely unworthy of belief or any credence whatsoever, the various items, although differing in dates, apparently were written at one time, in pencil, and by the same person."

On the threshold of our labors in review we are confronted with an alleged abstract of the record which is glaringly a gross violation of the requirements of the rules of this court in relation to the manner of its preparation. There is no coherency of detail in it. It is disjointed, unconnected, discursive and wholly unintelligible as an abstract, and leads nowhere but to confusion. An understandable case cannot be extracted from this abstract. It is a veritable jungle of incoherent extracts made from the pleadings and proofs. To illustrate: The .basic rights of the parties rest in the terms and covenants of the trust deed, but not one of the covenants is even shadowed forth in the abstract. None of the exhibits are abstracted. The alleged book account, in reliance on the verities of which Cahill's whole defense is founded, while referred to, is in no sense abstracted. No succinct or intelligent statement of this book account can be found anywhere in the abstract. The so-called "Recapitulation Summary" falls far short of meeting such requirement. The abstract before us does not even serve the purpose of a chronologically correct index to the record. It also violates all precedent and practice in italicizing and putting in "small caps." such matter as counsel indicate bear more particularly in favor of their contentions. Such palpable ignoring of the rules of this court prescribing the method to be followed in the preparation of abstracts cannot receive our sanction, even by indirection, which would be inferable from our ignoring the breach. The Supreme Court, as well as this court, has frequently admonished counsel who have been derelict in this regard. The Supreme Court say in City Electric Railway Co. v. Jones, 161 Ill. 47: "Everything upon which error is assigned must appear in the

abstract.'' In Gibler v. City of Mattoon, 167 Ill. 18, it is said: ''It is the duty of parties bringing cases here for review to prepare and file complete abstracts of the record, in accordance with the rules, and such abstracts as we can safely rely upon. It is not our duty to perform this work of counsel, which, in detail, as to them, is inconsiderable, but when imposed upon us, in the aggregate, extremely burdensome. It is not meant to be said that the record is voluminous in this case, or that the abstract is deficient in other respects not mentioned, but the rule is the same in all cases and should, not be relaxed.'' The court, in disposing of this case, grounded its decision on the fact that the errors assigned did not appear upon the abstract, and say: ''The point is raised by defendant in error that under the assignment of errors as made and from the record as abstracted no error which would authorize a reversal appears, and this point must be sustained.'' These observations are of equal application to the record as abstracted in the case at bar, and fully as controlling. The finding of the master set out in the abstract is amply sufficient to support the decree, in the absence of anything found in the abstract tending to impeach it.

What is relied upon as error must be set out in the abstract, and alleged errors not based upon anything appearing in the abstract of record will not be considered by the court. Harper v. Dixon, 70 Ill. App. 136; Shively v. Hettinger, 67 *ibid.* 278; Leverenz v.Elder, 65 *ibid.* 80; Wabash R. R. v. Smith, Adm'x, 58 *ibid.* 419; Joliet Steel Co. v. Call, 42 *ibid.* 41; Bangs v. Paullin, 37 *ibid.* 465; Mueller v. Newell, 29 *ibid.* 192.

The court will not search the record to find out what the abstract ought to show. Farson v. Hutchins, 62 Ill. App. 439; Heidenbluch v. Rudolph, 50 *ibid.* 242; Allison v. Allison, 34 *ibid.* 385.

As said in Spain v. Thomas, 49 *ibid.* 249, ''We have no right to waive the enforcement of these rules'' (relating to abstracts) ''as a matter of favor in any case,

without granting the same indulgence in other cases, and thus effectually suspending the operation of the rules altogether. The Supreme Court in Lancaster et al. v. The W. & S. W. Ry. Co., 132 Ill. 492, hold that such rules, when established, have the force of law and are obligatory upon the court itself as well as upon the parties, and must be administered according to their terms while they remain in force." Many other decisions to the same purport might be readily quoted; they are numerous and of uniform character, but those cited are sufficient.

The abstract simply mentions that objections and exceptions were filed to the master's report, but fails to set forth what the objections or exceptions were, or what disposition the chancellor made of the exceptions. No reversal of a decree can be allowed where the abstract fails to disclose the tenor of the exceptions and the disposition of them by the court.

In Singer v. Steele, 125 Ill. 426, the court say: "The practice is, when a party is dissatisfied with the finding of the master in chancery, he shall make distinct exceptions, so the court can readily understand what matters are at issue between the parties; otherwise it will be understood the party acquiesces in the conclusions and findings of the master." If he fails to except in the trial court, he cannot do so in a court of review. Such court cannot pass upon exceptions in ignorance of what they are. Failing to appear in the abstract, the court will not search the record in an effort to find them. Foster v. Van Ostern, 72 Ill. App. 307.

Notwithstanding the abstract fails to contain any matter of proof supporting the errors assigned and argued, we will briefly note the merits of the matters urged as constituting error.

Waiving the question of whether or not an open account, such as Cahill's, could be set off in a proceeding of this character, in which the transaction involved in the bill is admitted and the genuineness of

the securities in that bill sought to be enforced un-challeneged, in what does Cahill's claim rest?

First, an alleged account book, kept in a sporadic way, each item being written in lead pencil by Cahill. No other account in the book; not used in any regular business; not kept in chronological order as to date; made up in a sporadic manner and never exhibited to Mrs. McElroy, and in some respects the items are not only ridiculous but preposterous, such as an item for "14 gross of toilet soap, $280," under date of October 29, 1902; another item, under date of November 19, 1905, "Cemetery flowers for her mother's, husband's and son's graves upon frequent occasions, $110"; "Miscellaneous provisions, etc., for more than three years, $714.09"; "Time acting as her agent for about three years from three to four hours per day at 50c, $1550." Not a syllable of competent evidence in support of any of these items is found in the record.

Cahill is clearly disqualified to testify in relation to them, and the testimony of the other witnesses is limited to seeing Mrs. McElroy and Cahill together at infrequent and widely separated intervals, and of casual attentions paid by him to her, and some payments made for meals in a restaurant, of which meals they both partook, and some discursive talks with Mrs. McElroy in relation to what Cahill was doing for her.

It is also said Cahill gave Mrs. McElroy a duplicate note for $2,387 on the representation that the original was lost. This duplicate was not forthcoming, but the original was produced in evidence before the master. How the existence of a duplicate note can affect the right of recovery on the original after its maturity in the absence of proof of payment, we are unable to perceive. If any payments were made upon the debt and indorsed upon the duplicate note, the burden of so proving was upon Cahill. This he failed to do.

Complaint is made that the master illegally charged for taking and transcribing the testimony, because a stenographer was employed to and in fact did both

take and transcribe the testimony. The record shows the payment of stenographers' fees was made in accord with the written stipulation of the parties. In this stipulation there is no agreement by the master to waive his right to receive the fees allowed for like services by statute. Counsel in urging this objection evidently misconceive the scope of the stipulation to which they were parties.

There is nothing in this record calling for our review which upon examination discloses any reversible error, and the decree of the Circuit Court is therefore affirmed.

*Affirmed.*