April 7th, 1909.

————o————

## No. 4703.

## Court of Appeal, Parish of Orleans.

## WIDOW JOHN HEPPLER VS. ARTHUR McGUIRK.

1. Where an attorney at law contracts for the performance of certain services for a specific fee, and his services thereunder are fully performed to the extent which the law at the time gave relief, and he is subsequently required to perform other and different services, not in the contemplation of the parties at the time of executing the original contract, and which additional services consisted in the attorney preparing Legislative Acts and Conostitutional Amendments, the adoption of which were necessary in order to cover a portion of his client's claim which subsequent events developed could not be made under the laws extant at the time of the original employment, and the attorney presented arguments in support of such legislation and otherwise took all necessary stetps to finally accomplish the settlement of the claims, a stipulation and agreement between the attorney and his client for additional compensation for such additional services, is not unfair, and the fee agreed therefor will be allowed.

Appeal from Civil District Court, Division "B."

Henriques & Duchamp, for Plaintiff and Appellee.

McCloskey & Benedict, Chas. Rosen, for Defendant and Appellant.

ESTOPINAL, J. This is a suit by the plaintiff in which she

—266—

seeks to secure the return to her by the defendant of certain certificates of indebtedness issued by the City Council of New Orleans for unpaid salaries for the months of July, August and September, 1885, 1886 and 1887.

Her petition recites that she was a teacher in the public schools of the city of New Orleans between the years 1880 and 1888, and that she is the owner of, and entitled to the delivery and possession of, the certificate of indebtedness issued in her name, under date of January 30th, 1904, by the Comptroller of the City of New Orleans, by direction of the City Council, and duly countersigned by the Mayor, said certificates being the written evidence of the recognition and assumption of payment by the city of New Orleans of the amount due her for salary in the "Short Street" school for the months of July, August and September, 1885, 1886 and 1887, to-wit: Four hundred and five dollars ($405.00).

Plaintiff avers that pursuant to the Acts 315 and 316 of the Constitution of the State adopted in 1898, the city of New Orleans examined, approved and assumed payment of the claims of the teachers and portresses of the public schools for the unpaid salaries for the years 1885, 1886 and 1887, and that by direction of the City Council under Ordinance 2044 N. C. S., the Comptroller issued said certificate of indebtedness.

The plaintiff then alleges that at the time the certificates of indebtedness was issued, January 30th, 1904, the defendant, without her authority, knowledge or consent, made application for and secured from the Comptroller of the City of New Orleans all of the certificates prepared by said Comptroller, including the one prepared in her name, that the defendant has had, and still has, possession of her certificate of indebtedness, and that his possession of said certificate is unwarranted and illegal, she never having authorized him to secure same for her account.

Plaintiff avers that by Act 2 of the Legislature of 1906, the City of New Orleans was authorized and required, through the Board of Liquidation of the City Debt, to issue and sell bonds for the payment of the debt due on unpaid salaries of school teachers and portresses thus recognized and assumed, together with interest at four per cent per annum on the principal of the certificates representing said debt from October 1,

—267—

1903, to January 1, 1907, and providing for the payment of the principal and interest of said bonds, and the submission to the people of the State of an amendment to the Constitution authorizing the issuance of said bonds, and ratifying all the provisions of said Act, which amendment to the Constitution was adopted at the Congressional election in November, 1906.

Plaintiff avers that by virtue of the provisions of said Act 2 of 1906, and the Constitutional amendment of 1906, aforesaid, the City of New Orleans has caused to be advertised, and is now advertising, through the Board of Liquidation of the City Debt, for bids for the sale, in accordance with law, of the bonds, and that it will be necessary for her under Section 3 of Act 2 of 1906, to have and surrender to the Board of Liquidation, her certificate of indebtedness in order to obtain payment of her claims in principal and interest.

Plaintiff makes the further averment that as sole and original owner of said certificate of indebtedness (never having in anywise parted with her right of ownership, or pledged said claim, or authorized anyone to secure said certificate for her, she is entitled under the law to the delivery and possession of said certificate.

Plaintiff prays for judgment decreeing her to be the sole owner of said certificate, and condemning and commanding the defendant to make immediate delivery.

Defendant tendered the general issue, but makes the following admissions, viz: That the plaintiff was a teacher as alleged, and that a certificate of indebtedness in the name of the plaintiff was delivered by the Comptroller of the City of New Orleans to defendant. Defendant denies that the delivery by the Comptroller and the acceptance by him of said certificate was without plaintiff's knowledge, authority and consent, but on the contrary, he avers that he made application for and secured from the City Comptroller said certificate of indebtedness with plaintiff's full authority, knowledge and consent; that by a lawful contract in writing, signed by plaintiff, he (defendant), was empowered and required to have said certificate issued to him, to receive and receipt for same and to collect the money thereunder and to account to plaintiff therefor, deducting therefrom for his services twenty per cent of the amount recovered for plaintiff as teacher during the years 1885, 1886 and 1887.

—268—

Defendant avers that by virtue of said writing he had a lien and privilege upon said certificate of indebtedness and upon its proceeds for the payment of his compensation as plaintiff's counsel, and that until such payment plaintiff is not entitled to the delivery of said certificate.

The defendant finally charges that the averments in plaintiff's petition to the effect that "defendant as attorney at law and Assistant City Attorney, without petitioner's authority, knowledge or consent, made application to and secured from the Comptroller of the City of New Orleans, said certificate of indebtedness, and that possession by defendant of said certificate of indebtedness is unwarranted and illegal, are false, malicious, libelous and perjured, wantonly made with the intent and purpose of injuring and damaging defendant's reputation and character, and he reserves the right to secure legal redress against plaintiff and whoever else may be responsible, and prays that plaintiff's suit be dismissed.

At the trial below the following admissions were made, and upon the record as thus made up, the case went to trial:

"Counsel for defendant having shown counsel for plaintiff a certain written agreement affecting this cause, made and entered into between plaintiff and defendant on May 23, 1901, and plaintiff having concluded that her allegations denying the existence of any such authority in plaintiff, though made in good faith, were made in error, and as a result of a lapse of memory.

"It is admitted that a contract was, on May 23, 1901, executed by and between plaintiff, one of the teachers referred to in the contract, and defendant, an attorney at law of this city, that same was and is in the words and figures following, to-wit:

"The judgment in the Warner case having absorbed the funds out of which the teachers were to be paid claims recognized by Articles 315, 316 and 317 of the Constitution of 1898, and additional service not contemplated by the original agreement being required to be rendered by Messrs. McGuirk. (These words eliminated in this manner in original contract).

"It is agreed that they shall be paid an additional fee of ten per cent of the amount to be recovered for the years 1885, 1886 and 1887, making the total fee to be paid them twenty per cent, all expenses included.

"They are authorized and empowered to have certificates

of indebtedness issued, to receive and receipt for the same, to collect the money thereunder, and account to the respective teachers for the proportion due each, and to exercise the same powers as with reference to the claims for the years 1882, 1883 and 1884, subject to such objections as plaintiff shall desire to make.

"It is further admitted that the face value of plaintiff's certificate is ......................... dollars, and that same bears interest as provided for in Act 2 of 1906 and the Constitutional amendment of 1906, ratifying said act, and is in the words and figures as set forth in her petition, and that said certificate was issued to the defendant under said contract, as the attorney of plaintiff, by the Comptroller of the City of New Orleans under and by virtue of said Ordinance No. 2044, N. C. S., the claim represented by said certificate being listed on the schedules referred to and made part of said Ordinance, and as such duly recognized and assumed by the Ciey of New Orleans in said ordinance.

"It is further admitted that, upon the execution of the aforesaid contract, defendant brought suit on behalf of plaintiff and others to compel the payment of the aforesaid and other claims, as shown by the cause entitled State ex rel Wilder vs. Board of Liquidation of the City Debt, No.—— of the Docket of the Civil District Court, and the number 15, 702, of the Docket of the Supreme Court, and that thereafter he prepared and presented arguments in support of the passage of Act No. 2 of 1906 of the General Assembly of Louisiana, and the constitutional amendments adopted by the people at the Congressional election in November, 1906, ratifying and confirming the said act; these admissions being subject to such objections as defendant may desire to make on the trial of the cause.

"It is agreed that the reported decision in State ex rel, Wilder vs. Board of Liquidation of the City Debt, as found in Volume 115 of the printed reports of the Supreme Court of the State, shall be used by counsel in argument, and by the courts, in lieu of the record and transcript in said case; also the decision in 51 An. 1849, and 179 U. S. 622; and that Ordinance No. 2044 N. C. S., can be also referred to and read from by counsel and the courts, just as if duly offered and filed in evidence, and also the record and proceedings in all

of the above cases, with reservation of such objections, however, as counsel for defendant may desire to make.

"It is further agreed that defendant does hereby formally waive any and all claims for damages as reserved in his pleadings, or otherwise, and growing out of all or any of the allegations set forth in plaintiff's petition."

The judgment of the District Court was in favor of plaintiff as prayed for, from which judgment defendant has appealed.

Under the admissions, the various laws, City Ordinances and decisions of the courts, State and Federal, touching the subject of the payment of the school teachers' claims for back salaries are specially offered in evidence.

We gather the historical facts to be substantially these:

The Act 23 of 1877, entitled "An Act to regulate public education in the State of Louisiana, to provide revenues, etc., among other provisions prescribed that the Board of Directors of the City Schools (Parish of Orleans), shall adjust equitably and fix the salaries of the teachers, porters and portresses employed in said schools, and it (Board of Directors) shall prescribe that the *annual salary of each employee* shall be divided into twelve monthly payments. It appears that the employees of the city schools in accordance with the legislative enactment referred to *supra* received a yearly compensation divided into twelve payments. In 1882, 1883 and 1884, however, for want of funds, the salary of the teachers for certain months in each of those years was not paid. It was not denied by either the school or municipal authorities that the salaries were due for those years but the Board of School Directors from the year 1885, inclusive, adopted a new system of employment and compensation and provided: "That the months of January, February, March, April, May, June, October, November and December, are hereby declared the scholastic months," and providing that teachers should be paid for those months at the rate of salaries then paid. The first of these resolutions was adopted by the Board of Directors in January, 1885, and was intended to govern the employ and pay of persons employed in the city schools for that year. At the beginning of both 1886 and 1887, the same resolution was adopted, and thus it is that the teachers are found claiming the salaries for the months of July, August and September, 1885, 1886 and 1887.

By Act 81 of the Legislature of 1888, it was provided that

—271—

the city of New Orleans should, out of the funds appropriated for school purposes, make provisions to settle the unpaid salaries for the years 1881, 1832 and 1884. The City Council refused to make the appropriation, urging the unconstitutionality of Section 71 of the Act which sets forth the scheme for the payment of the teachers' salaries for the years just stated, and in this refusal it was sustained by the Supreme Court.

State ex rel Board of Directors of the Public Schools vs. The City of New Orleans, 42 A. 92.

The Legislature of 1890, the session of which came on after the decision of the court cited *supra*, proposed an amendment to the Constitution of the State which was adopted by the people at the succeeding general election. The amendment provided "that the City of New Orleans was empowered to examine into and assume the payment of the claims or obligations of the Board of School Directors due for the years 1880, 1881, 1882, 1883 and 1884, now in the hands of the original owners who have in no wise parted with their right of ownership or pledged the same, etc."

Pursuant to the provisions of this amendment the City of New Orleans assumed and paid during a period extending from 1893 to 1897, a considerable part of the obligations of the Board of School Directors, but left unpaid the salaries for certain months in the years 1882, 1883, 1884, 1885, 1886 and 1887.

The Constitution adopted in 1898 sought, by Articles 315, 316 and 317, to make provisions for the full settlement of the unpaid obligations of the Board of School Directors, and to that end, by Article 315, the City of New Orleans was required to examine into and assume the payment of the obligations of the Board of School Directors, said claims to be filed within ninety days after adoption of the Constitution; by Article 316 the City Council shall issue certificates of indebtedness to the owners of said claims when examined and found to be equitably due, and all said certificates shall be paid by the Board of Liquidation, and Article 317 provided that "the funds requisite to pay said claims shall be provided by said Board of Liquidation, by sale of a sufficient number of the constitutional bonds of the City of New Orleans of the issue provided for by Act 110 of the Legislature of 1890, and the amendment of the Constitution

—272—

adopted by the people at the general election in 1892."

Then it was, shortly after the adoption of the Constitution of 1898, that the plaintiff entered into the following contract with the defendant, who had associated with him, Mr. Charles J. Theard, a highly reputable practitioner of this bar:

"We, the undersigned, do hereby agree to represent the teachers in their claims against the City of New Orleans, now before the City Council. In the event that we are successful in receiving their claims from the Board of Liquidation, through the City Council, we shall charge a fee of five per cent for all monies collected. In the event of the claims of 1885, 1886 and 1887, having to be carried to the courts of the State, we will charge a fee of five per cent additional for monies collected on said years 1885, 1886 and 1887, it being distinctly understood that if we are not successful in getting the claims due the teachers no fee will be charged for our services."

The claims due the teachers were pressed by defendant and his associate, and after proof had been filed with the City Council (within the prescriptive period of ninety days), the claims for the years of 1882, 1883 and 1884 were examined and approved by the City Council, those for 1885, 1886 and 1887 (vacation months), being rejected without prejudice to the rights of the claimants to again urge them.

The Comptroller of the City issued the proper certificates of indebtedness for the claims examined and approved by the City Council, but the Board of Liquidation refused to pay them as directed by Articles 117 of the Constitution (1898), and mandamus proceedings were thereupon instituted by defendant to compel payment of the claims. The mandamus was made peremptory, the Supreme Court holding that: "That the Constitutional Convention had the power to have those claims paid through the one per cent tax, but only *subordinately to the rights upon the tax in favor* of creditors holding contract rights at the date of the adoption of the Constitution." "State ex rel. Miss L. B. Wilder et als vs. Board of Liquidation City Debt, et al."

This case was taken up on writs of error to the Supreme Court of the United States, and the decision of the State Court was affirmed, 179 U. S. 622.

The Board of Liquidation then proceeded to sell the bonds, and with the proceeds the certificates of indebtedness for the

—273—

approved claims of 1882, 1883 and 1884 were paid.

There still remained unapproved by the city and unpaid the claims for the vacation months of 1885, 1886 and 1887, heretofore rejected by the City Council (with a reservation of the rights of the claimants to again urge them). Shortly afterwards, or to be exact in .... ..., 1901, the case of John D. Warner et als vs. City of New Orleans, U. S..Reports, was decided against the City ordering the payment of the drainage warrants theretofore issued by the City, and this judgment not only exhausted all of the unissued bonds in the hands of the Board of Liquidation provided for by Act 110 of 1890, and the Constitutional amendment of 1892, out of which it was provided by Articles 315, 316 and 317 of the Constitution the obligations of the Board of School Directors should be paid, but required the levy of an additional tax by the City.

Defendant and his associate, under their contract, entered into after the adoption of the Constitution, in which they engaged to collect the claims out of the fund provided by said Constitution, exhausted every effort in and out of court, and were rewarded by a partial success only, not due to any fault of theirs, but to the fact that the means or source from which funds could be drawn to pay the claim as we have noted, was extinguished. Their contract was virtually at an end, as there was no then existing source from which the claim for the years 1885, 1886 and 1887 could be lawfully paid, and their labors under the contract finished.

If it were not so that the duties and obligations of defendant under the contract were at an end, what obligation was there on the part of the school teachers, the plaintiff included, to pay any part of the stipulated fee?

They made no point of this but gladly accepted from their counsel the money recovered, less the ten per cent fee agreed upon.

Pretermitting any discussion of the effect of the denial by plaintiff in pleading, of authority on the part of defendant to retain possession of the certificates of indebtedness when such authority is shown to exist in the shape of a written contract signed by plaintiff, we pass on to a recital of events following the payment of the claims of 1882, 1883 and 1884.

On the 23rd of May, 1901, the following contract was entered into between the plaintiff and other teachers, to-wit:

—274—

"The judgment in the Warner case having absorbed the fund out of which the teachers were to be paid claims recognized by Articles 315, 316 and 317 of the Constitution of 1898, *and additional service not contemplated by the original agreement being required to be rendered by* Messrs. McGuirk.

"It is agreed that they shall be paid an additional fee of ten per cent of the amount to be recovered for the years 1885, 1886 and 1887, making the total fee to be paid them twenty per cent, all expenses included.

"They are authorized and empowered to have certificates of indebtedness issued, to receive and receipt for same, to collect the money thereunder, and account to the respective teachers for the proportion due each, and to exercise the same powers as with reference to the claims for the years 1882, 1883 and 1884."

The objection by plaintiff to the introduction of the contract of May 23rd, 1901, on the ground that it referred to a previous writing or contract which defendant should but did not make part of his pleadings or offer in evidence need not be discussed, since by consent of counsel the said first agreement has been supplied and now forms part of the record.

The question presented is, whether by reason of the existence of the relation of attorney and client at the time of the increase of compensation from ten to twenty per cent, that fact does not make the last agreement presumptively unfair.

Plaintiff contends that the burden was upon the defendant to show by abundant affirmative proof that this presumption of the law is unfounded. This proposition cannot be seriously disputed, and it now remains to be seen whether defendant has met this burden.

At the outset we may state that from our view of the matter, the duties and obligations of the attorneys were at an end when their efforts to collect under the first agreement resulted in the partial collection only of back claims, the payments being made in a certain manner, and from the only fund indicated by the Constitution of the State. That fund became absorbed and extinguished, and thus ended the defendant's duties under the original contract.

It is true that the first contract does not say in so many words that the attorneys were expected under their contract to confine their efforts to obtain payment out of the fund pro-

vided by the Constitution of 1898, but it is fair to assume that this, and this alone, was intended. Every circumstance surrounding this transaction warrants this interpretation. There was no other fund.

Counsel were paid the fee agreed upon, and the then existing relations of attorney and client, as we have said, practically ceased to exist. The teachers, plaintiff among them, did not despair of getting pay for the months in the years 1885, 1886 and 1887. and wished to continue the fight. Defendant was prevailed upon to undertake the work, and entered into the last contract which provides for an additional fee of ten per cent on the amount recovered for these years.

If instead of entering into a new agreement which in turn increases the compensation under a former one, the contract had been an entirely original and distinct one, and made without reference to the first, had stipulated a fee of twenty per cent, and plaintiff as in this case had, with a full understanding of the difficulties to be overcome and the labor and expense involved, signed this new and original contract, it may not be seriously contended that she could have contested and escaped the consequences of said voluntary act in the absence of some showing that the fee was exorbitant.

In this case it is conceded that the fee is not exorbitant, but that it was unfair for defendant to demand and accept an increase of fee in another or subsequent contract, for work which he was required to do in a prior one for a stipulated fee.

In an early case, Henry Clay vs. Ballard. 9 Rob. 308, the defendant, though not a party to the suit of Groves vs. Slaughter, did, by reason of his interest in the suit, voluntarily offer to pay plaintiff, who was attorney in that suit, four thousand dollars ($4,000.00) in addition to his fee already stipulated and agreed upon in that case. When called upon he refused to pay a fee, and was sued. His defense was that the attorney (Clay), was already bound to render the best service of which he was capable, and that therefore the agreement was without consideration. The court says:

"It is obvious there was a sufficient legal consideration for the promise. In the letter written to the plaintiff and signed by the defendant and Slaughter, enclosing the notes now sued on, they say: 'We are satisfied that we are represented by able

counsel who will use their best efforts in our behalf for the price already stipulated, but relying on your ability and best exertions more particularly, we feel justified in enclosing you the above obligation, etc.'

"Here the defendant holds himself out as interested in the case itself, as well as Slaughter, and the evidence shows that he was interested in the question to a large amount. Nor did we see any thing immoral, either in the offer or the acceptance of such extra compensation in case of success."

In the case of Singer, Mimick & Co., vs. Steele, 17 N. E. 751, 125 Ill. 426, a case in many respects similar to the one at bar, the Supreme Court of Illinois decided that:

"An attorney agreed to collect and remit certain notes for a fixed fee, which at the time were regarded good, but before they all became due and collected, the maker failed, and the attorney was compelled to take an assignment of other demands as collateral security for the notes, which required additional labor and expense to collect.

"*Held*, That he was entitled to extra compensation therefor above the fee agreed on, whether done in person or by his law partner."

In Mahoney vs. Gergin, 44 Cal. 423, it was held:

"An agreement by an attorney with a client to render his professional services in the Courts of this tSate in actions to test the validity of the client's title to certain real estate, in consideration of a conveyance by the client to the attorney of a portion of the land, does not bind the attorney to render his services in an action brought to test the validity of the title in the Circuit Court of the United States for this State.

In Headley vs. Good, 24 Texas 231, it was held:

"That an attorney, under a contract to defend a party against a criminal accusation for which he stands indicted, is not bound to defend a suit upon a *scire facias* on the forfeiture of the bond for his appearance to answer to the indictment."

The attorney refused to defend the suit upon the *scire facias* "without an additional fee," and the court held him in his position.

The admissions declare, and it is conceded at the bar of this court, that defendant not only prepared Act No. 2 of 1906, and the Constitutional amendment adopted by the people at the Congressional election in November, 1906, ratifying and confirm-

ing the said Act, but that he presented arguments in support of, and through his efforts, secured the passage of the Act 2 of 1906, and that he did so as the attorney of the plaintiff. Indeed the whole scheme for the payment of the teacher's claim for the years 1885, 1886 and 1887, after the fund under the Constitutional provision was exhausted, was conceived, carried out by defendant, and, through his influence and exertion, was enacted into law. This is not only conceded, but is a part of the public history of the State of which we take judicial notice under the authority of State ex rel Saunders vs. Kohnke (the Merger case), 109 La., 838. In that case the Court said:

"The drafting of both the Acts and the amendment was the handwork of the promoters of the tax scheme, the chosen agents of the tax payers" (p. 862).

"It is part of the public history of the State, of which this Court can take judicial cognizance, that the extra session of the Legislature was called at the instance of the promoters of the sewerage and water scheme, and that the Act of 1892, and the Constitutional Amendments were adopted at their instance" (p. 859).

"The drafting of the Act and of the joint resolution proposing the amendment was the handiwork of the tax payers themselves, through their chosen agents, of which fact this Court may take judicial notice as of part of the public history of the State" (p. 862).

For six years the plaintiff has stood by and acknowledged defendant as her attorney under the contract, the existence of which she denies for the first time in her petition, and is then forced through her counsel to admit its existence when confronted with the contract over her own signature and which she now, and in argument only, seeks to avoid on the ground that it is "unfair." For six years the plaintiff has seen the services of the defendant performed openly and publicly in her behalf under the contract, and now as she is about to reap the fruits of defendant's labor obtained under and by virtue of that contract of employment, she seeks to repudiate its obligations. This she cannot do.

As was said in Butcher's Union vs. Crescent City Slaughterhouse Company, 41 A. 362: "The same power which authorizes courts summarily to enforce the performance by attorneys of

their duties to their clients, intervenes to protect the just rights of attorneys in settlements between them and clients."

In every case in the Reports of our State, as well as of other States, the rights of the attorney under his contract of employment has ben upheld, unless of course, it has been obtained by fraud or deception or other ill practices which it is not pretended exist in the present case.

The facts of this case, as admitted of record, as conceded at the bar of this court in argument, and as forming a part of public history of the State of which we must take judicial cognizance, are overwhelmingly with the defendant.

The law, as applicable to these facts, affirms the legality and binding effect of the contract.

For the reasons herein expressed, it is therefore ordered, adjudged and decreed, that the judgment appealed from be, and the same is hereby avoided, set aside and reversed, and plaintiff's suit dismissed at her costs in both courts.

Dufour, J.,: dissents.

April 7th, 1909.

Rehearing refused April 19, 1909.

Writ denied by Supreme Court April 27, 1909.

———o———

No. 4702.

Court of Appeal, Parish of Orleans.

Henriques & Duchamp, for Plaintiff and Appellee.

McCloskey & Benedict, Chas. Rosen, for Defendant and Appellant.